[Crim. No. 1958. First Appellate District, Division One.—September 28, 1937.]

In the Matter of the Application of HERMAN KNAESCHE for a Writ of Habeas Corpus.

Leo R. Friedman for Petitioner.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

THE COURT.—At a regular meeting of the state board of prison terms and paroles held on March 24, 1936, it was ordered that petitioner, a prisoner in the state prison at San Quentin, be released on parole into the custody of the former warden of said state prison, the order to become effective on April 15, 1936. Petitioner was released accordingly, and on June 12, 1936, said board changed the conditions of the parole by directing that petitioner "leave the United States of America, never to return", and ordered the state parole officer to arrange for petitioner's expatriation. Before such arrangements were completed, however, and on July 1, 1936, the Governor of California, of his own motion, made and signed an executive *ex parte* order cancelling and revoking said parole and directing that petitioner be returned to the state prison; and on July 2, 1936, pursuant to said executive

order, petitioner was apprehended and redelivered into the custody of the warden of said state prison. Challenging the legality of the Governor's order of revocation, petitioner in January, 1937, applied to and obtained from the Supreme Court a writ of *habeas corpus,* which was made returnable before the Superior Court in and for the County of Marin, and in March, 1937, after a hearing before said superior court, petitioner was remanded to the custody of the warden of said state prison. Thereupon petitioner instituted the present proceeding in *habeas corpus* in this court.

■ It is clearly within the power of the Governor, as well as the parole board, to revoke paroles; but it has been the statutory law of the state for many years that no parole shall be revoked "without cause, which cause must be stated in the order" of revocation. It was so declared in 1915 (Stats. 1915, p. 981), and again in 1929 (Stats. 1929, p. 1930), and notwithstanding the parole statutes have been amended or reenacted from time to time, the particular provision above referred to has never been altered or changed.

■ The ground upon which the Governor's order of revocation was based was, as stated therein, that "it appears from telegrams received from the judge of the superior court before whom the prisoner was tried and convicted, the district attorney and the sheriff of the county from which the prisoner was sentenced, that no written or other notice of such meeting (of March 24, 1936) to consider the granting of such parole to such prisoner was received by said officers of said county, or any of them, and . . . while the records in the office of the clerk of said (parole) board contain carbon copies of such written notices dated February 1, 1935, there is no further or any other record or evidence that such notices were actually sent".

Until 1929 there was no law requiring notices to be given of the pendency of applications for parole. Nevertheless it had been the custom of the parole board up to that time to send such written notices to the judge of the superior court, the sheriff and the district attorney of the county from which the prisoner was committed. In 1929 two statutory amendments were enacted requiring such written notices to be sent. One was an amendment to the parole law (Stats. 1929, p. 80), and the other an amendment to the indeterminate

sentence law (Pen. Code, sec. 1168, Stats. 1929, p. 1930). The wording of the amendments was substantially the same and provided that at least thirty days before the board shall meet to consider the granting of a parole to any prisoner, the board shall send written notices thereof to the judge of the superior court before whom the prisoner was tried and convicted, and to the district attorney and the sheriff of the county from which the prisoner was sentenced.

Petitioner entered the penitentiary in 1919 under a life sentence imposed by the Superior Court of Mendocino County for the crime of murder, to which he had entered a plea of guilty. After having served seven years he was entitled under the provisions of the statute (Stats. 1901, p. 82) to apply for parole, and he filed such an application. As shown by the written stipulation of facts on file herein, said application came on regularly for consideration and was either expressly or automatically continued for reconsideration approximately twelve times; and finally, in March, 1936, after petitioner had served approximately seventeen years of his sentence, his application was granted, to become effective on April 15, 1936. With respect to the question of the giving of written notice of the pendency of the application, it appears from said written stipulation of facts that both before and after the amendments of 1929, the board, as was its custom in all cases, sent written notices of the pendency of petitioner's application to the judge of the superior court, the sheriff, and the district attorney of Mendocino County, and that in response thereto the board received ten letters from said officials. Two were sent to the board by the superior judge, dated September 14, 1926, and October 1, 1932; two by the sheriff, dated September 18, 1926, and January 17, 1930; and six by the district attorney, dated August 18, 1926; June 29, 1929; September 17, 1929; September 28, 1932; February 14, 1933, and September 22, 1933. The board did not keep a complete record either by carbon copy or notation of the notices so sent, but there were found among the files in petitioner's case carbon copies of five letters sent to the judge of the superior court and four to the district attorney, advising them that petitioner's application for parole would be considered on a future monthly calendar, specifying the month in which the application would be so considered.

Those sent to the superior judge were dated respectively July 30, 1926; June 27, 1929; September 28, 1932; September 19, 1933, and February 1, 1935; and those to the district attorney were dated respectively June 27, 1929; September 28, 1932; September 19, 1933, and February 1, 1935. The files did not disclose copies of any letters to the sheriff, but as shown by the stipulated facts, it was the custom of the parole board to send such letters to the sheriff as well as to the other officials named; and as above stated, in response to the notices so sent the board received two letters from the sheriff, dated respectively September 18, 1926, and January 17, 1930.

In view of the foregoing facts, we are unable to sustain respondent's contention that in granting petitioner's parole said board did not comply with all necessary legal requirements.

It is argued in support of the executive order of revocation and said order is evidently based upon the theory that under the amendments of 1929 the parole board acts without jurisdiction and consequently its action is invalid unless at least thirty days prior to the particular meeting at which the parole is granted notices are sent by the board to the officials named, stating specifically the date on which the application for parole is to be considered, and that this is so regardless of how many previous notices have been sent to said officials or their predecessors in office, of the pendency of the applications, and regardless also of how many letters have been received by the board from said officials in response to the notices previously sent.

We find nothing in the law to justify such construction; and since the adoption of the view contended for would result in casting doubt upon the validity of a large number of paroles granted by the parole board since 1929 upon the assumption that such was not the law, we are not prepared, in the absence of convincing reasons, so to hold.

Nor are we able to agree to respondent's further contention that where an application for release on parole is denied after notice of the pendency thereof has been sent to the officials named, new notices must be sent to said officials before the parole board again acquires jurisdiction to grant the application on reconsideration. Such contention in our opin-

ion not only fails to find support in the provisions of the statute but as would appear from the record before us, it would seem wholly impracticable to follow such procedure. Under the rules adopted by the parole board pursuant to statutory authority the denial of an application for release on parole automatically continues the hearing of the application for one year, even though no express order is made by the board to that effect; furthermore the rule of the board is that when an application is placed on a future monthly calendar to be heard, it means simply that if said application cannot be reached in its regular turn during the month specified it will be taken up and considered as soon as practicable thereafter. If, therefore, as required by the statute and as was done in the present case, at least thirty days before the board meets to consider the application it sends written notices to the officials named of its intention so to do, the board has complied with the provisions of the law, and it is unnecessary thereafter to send additional notices in case of a postponement of the hearing.

■ Respondent raises the additional question that the executive order revoking the parole is not subject to review in a proceeding of this kind. It has been held generally, however, that it is within the province of the courts to review on *habeas corpus* an executive order made in a proceeding such as this involving personal restraint, for the purpose of ascertaining whether or not the order is jurisdictionally supported. Such power has been specifically exercised in other jurisdictions to review executive orders revoking paroles, and while there does not seem to be any case identical in point in this state, such power has been exercised to review executive orders growing out of extradition proceedings (*In re Shoemaker,* 25 Cal. App. 551 [144 Pac. 985]), and there would seem to be far more justification for the exercise of such power concerning executive orders revoking paroles.

In view of the conclusions we have reached on the issues above discussed, it becomes unnecessary to inquire into the additional points made by petitioner in furtherance of his application for release; and for the reasons stated it is ordered that petitioner be released from the custody of the warden of said state prison, subject, however, to the parole heretofore

granted by the state board of prison terms and paroles, and to all the conditions and restrictions contained therein.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 28, 1937.