[Crim. No. 11080. First Dist., Div. Four. May 3, 1973.]

In re RICHARD EARL YOUNG on Habeas Corpus.

**COUNSEL**

Robert W. Peterson for Petitioner.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Gloria F. DeHart, Ina Gyemant and Timothy A. Reardon, Deputy Attorneys General, for Respondent.

## OPINION

**GOOD, J.**[*]—On June 25, 1971, petitioner was convicted of violating Health and Safety Code section 11531 (marijuana sale) and sentenced to prison for the term prescribed by law. He had been arrested on April 29, 1971, and entered a plea of guilty on June 9. On June 29, he was received by the Department of Corrections (hereinafter "Corrections"). His petition for habeas corpus alleges that he was confined in the county jail of Santa Clara County during the 62 days between his arrest and delivery to Corrections because, by reason of indigency, he was unable to post the $6,250 bail ordered. The conviction carries a minimum term of three years before eligibility for parole. Under Penal Code section 2900, the term commences upon actual delivery of defendant into the custody of Corrections. Section 2900.5, added to said code by Statutes of 1971, chapter 1732, section 2, and effective March 4, 1972, provides that pretrial or probationary jail time shall be credited to a minimum prison term but expressly excepts prisoners delivered to Corrections prior to its effective date. Petitioner's delivery to Corrections was prior to the effective date of said statute.

■ When petitioner first discovered that his presentence jail time was not a credit against the minimum term, he filed a notice of appeal in the Santa Clara County Clerk's office on July 9, 1971, four days late. The appeal was never perfected. Respondent contends that petitioner's failure to appeal precludes consideration of his petition because of the rule that "habeas corpus cannot serve as a substitute for an appeal, and, *in the absence of special circumstances* constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction." (*In re Dixon* (1953) 41 Cal.2d 756, 759 [264 P.2d 513] [italics added]; *In re Black* (1967) 66 Cal.2d 881, 886-887 [59 Cal.Rptr. 429, 428 P.2d 293].) It is conceded that the issue raised by the petition is a proper basis for appeal. But two special circumstances appear in the record herein that preclude our dismissal of the petition because the issues could have been resolved upon appeal. First, there is presented "a constitutional question of extraordinary importance" (*In re Antazo* (1970) 3 Cal.3d 100, 107 [89 Cal.Rptr. 255, 473 P.2d 999]) by petitioner's contention that deprivation of presentence jail time results in a denial of his constitutional right to equal protection of the law. Second, petitioner's attempt to appeal was thwarted, at least in part, by the Santa Clara County Clerk's failure to comply with rule 31(a), California Rules of Court, requiring a clerk, whenever

[*]Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

a tardy notice of appeal is received, to advise the party that his notice "was received but not filed . . . and that he may petition the reviewing court for relief by verified statement or declaration under penalty of perjury, setting forth the date of the order or judgment from which the party seeks to appeal, the steps which the party took to file his notice of appeal on time, and any other information which has, or which the party believes has, a bearing upon the circumstances which caused the notice of appeal to arrive late." The clerk is thus under a duty to direct a prospective appellant not only where but also the manner by which a late appeal may be perfected. Here, the clerk, under date of July 9, 1971, merely wrote: "This is to inform you that your Notice of Appeal was received and not filed by this Office this date. Your notice was not timely, therefore your only remedy lies with the Court of Appeals in San Francisco, California." This terse note is obviously not a compliance with rule 31(a). The absence of appeal does not deprive petitioner of his right to habeas corpus relief or preclude our consideration of the issues raised by his petition.

Petitioner contends that "denial of credit for pre-sentence incarceration [which was] due solely to petitioner's indigency is an invidious discrimination based on poverty in violation of the equal protection and due process clauses of the 14th Amendment to the United States Constitution and article I, section 13 of the California Constitution." It is argued that the denial of credit to the minimum term of imprisonment set by Health and Safety Code section 11531 for the 62 days jail time elapsing between his arrest and delivery to Corrections, being due to his financial inability to furnish bail, results in an effective 3 years and 62 days minimum term of incarceration before he becomes eligible for parole and that this additional term would not be imposed on a defendant convicted for the same offense but who had the means to post bail and secure his liberty pending trial. He contends that only an indigent is assured of incarceration beyond the minimum term prescribed as punishment for the offense and only those unable to make bail suffer this consequence. No direct attack is made upon the constitutionality of California's bail laws, but it is argued that Penal Code section 2900 is necessarily unequal in application as between the poor who cannot afford bail and the rich who can. With italics supplied, he quotes from *In re Antazo, supra,* at page 108: "It is this difference in the *final treatment* of each which petitioner attacks."

No California cases appear to be directly in point on the constitutional issue. It has been held in *People* v. *Rose* (1940) 41 Cal.App.2d 445, 446 [106 P.2d 930], *People* v. *Trippell* (1937) 20 Cal.App.2d 386, 390 [67 P.2d 111], and *In re Gough* (1932) 124 Cal.App. 493, 496 [12 P.2d 968], that presentence incarcerations while awaiting trial and sentence cannot

be considered as part of any judgment subsequently pronounced and are not embraced within the statutory penalty of the crime for which a defendant is sentenced. Petitioner's counsel recognizes the rule of these cases is at odds with petitioner's claim but argues that they have been rendered obsolete by *Griffin* v. *Illinois* (1956) 351 U.S. 12 [100 L.Ed. 891, 76 S.Ct. 585, 55 A.L.R.2d 1055] and its progeny[1] and must be reevaluated in their light.

Relying on *Rose, Trippell,* and *Gough, supra,* and without discussing the case authority discussed below other than referring to the dissenting opinion in the United States District Court's decision in *Royster* v. *McGinnis* (S.D.N.Y. 1971) 332 F.Supp. 973, respondent argues that presentence incarceration is not punishment and the legislative determination of place of confinement for sentence and the term thereof is a proper and reasonable exercise of the Legislature's inherent power to define what constitutes crime and to prescribe punishment therefor.

■ We recognize that both proscribed conduct and prescribed punishment are essential to constitute a crime (*People* v. *Crutcher* (1968) 262 Cal.App.2d 750 [68 Cal.Rptr. 904]) and that these are matters for legislative determination, courts having no discretion as to either aspect. (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]; *People* v. *Redmond* (1956) 246 Cal.App.2d 852 [55 Cal.Rptr. 195].) But in the exercise of its function, the Legislature must conform to applicable constitutional limitations. The power to legislate does not, ipso facto, mean that a statute meets constitutional standards. The crucial question is not so much equality of sentence or punishment as such but whether or not the actual disparity in lengths of overall confinement of those convicted of the same offense who post bail and have no presentence confinement and those who are financially unable to post bail and are consequently confined pending trial constitutes an invidious discrimination in violation of the Fourteenth Amendment of the United

[1]Cited are *Douglas* v. *California* (1963) 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814] (*denial of equal protection* if indigent is refused court-appointed counsel); *Smith* v. *Bennett* (1960) 365 U.S. 708 [6 L.Ed.2d 39, 81 S.Ct. 895] (if indigent is required to pay a filing fee before docketing petition for habeas corpus); *Rinaldi* v. *Yeager* (1966) 384 U.S. 305 [16 L.Ed.2d 577, 86 S.Ct. 1497] (if indigent is required to reimburse county for cost of trial transcript on appeal); *Morris* v. *Schoonfield* (1970) 399 U.S. 508 [26 L.Ed.2d 773, 90 S.Ct. 2232], *Tate* v. *Short* (1971) 401 U.S. 395 [28 L.Ed.2d 130, 91 S.Ct. 668], and *In re Antazo* (1970) 3 Cal.3d 100 [89 Cal.Rptr. 255, 473 P.2d 999] (each of which for equal protection reasons, struck down sentences or probation orders that required an indigent to pay a fine or be incarcerated in jail until it was satisfied by credit of a given dollar amount per diem for each day's incarceration).

States Constitution or of article I, section 11 of the California Constitution that provides, "All laws of a general nature shall have a uniform operation."

In *United States* v. *Gaines* (2d Cir. 1971) 449 F.2d 143, 144, a defendant on probation pending sentencing on federal charges was arrested by state authorities in New York and could not make bail. He was detained in jail until the state charges were dismissed and he began serving the federal sentence. The court held he was entitled to credit against the federal sentence for the jail time served after bail had been set because his "lack of wealth has resulted in his having to serve a sentence that a richer man would not have had to serve." In *Culp* v. *Bounds* (W.D.N.C. 1971) 325 F.Supp. 416, it was held that where a defendant is sentenced to maximum terms and the offenses were bailable, a state's refusal to credit an indigent's presentence jail time to his sentence was an unconstitutional discrimination based on wealth because "wealthy defendants . . . are able to remain out of prison [jail] until conviction or sentencing; the poor stay behind bars." (P. 419.) The court found that no compelling governmental interest supported the difference in treatment and further noted that a recent North Carolina Supreme Court decision, *State* v. *Virgil* (1970) 276 N.C. 217 [172 S.E.2d 28], holding that "while in custody in default of bond, defendant was not serving a sentence as punishment for the conduct charged" (p. 34), would render proceedings in the state's court ineffectual, and, therefore, petitioner was not required to exhaust available state remedies before invoking federal jurisdiction.[2] The holding in *Parker* v. *Bounds* (E.D.N.C. 1971) 329 F.Supp. 1400, is the same as in *Culp, supra.* Similarly, in *White* v. *Gilligan* (S.D.Ohio 1972) 351 F.Supp. 1012, section 1.05 of the Ohio Revised Code that, as to felonies, defines "imprisoned" to mean "imprisoned in the penitentiary" (the effect of which upon the overall length of confinement is precisely the same as that of Pen. Code, § 2900), was held to discriminate against the poor and to violate the equal protection clause of the Fourteenth Amendment of the United States Constitution. The court quoted *Williams* v. *Illinois* (1970) 399 U.S. 235, at page 242 [26 L.Ed.2d 586 at pp. 593-594, 90 S.Ct. 2018]: "Since only a convicted person with access to funds can avoid the increased imprisonment the Illinois statute in operative effect exposes only indigents to the risk of imprisonment beyond the statutory maximum. By making the maximum confinement contingent upon one's ability to pay, the State has visited different consequences on two categories of persons since the result is to make incarceration in excess of the statutory maximum applicable only

[2]We have examined *State* v. *Virgil, supra,* and note that the decision does not discuss equal protection issues but merely cites North Carolina precedents of the same tenor as the California cases of *Rose, Trippell,* and *Gough, supra.*

to those without the requisite resources to satisfy the money portion of the judgment." It further found that the statute creates two classes of defendants, the first of which remain free on bail and thus receive full credit for "all of their periods of *actual* confinement" (italics added; 351 F.Supp. at p. 1014) and the second of which are confined in lieu of bail and "do not receive full credit for all of their periods of confinement because under the Ohio statutory scheme pre-conviction confinement is not imprisonment." (*Id.*) The court could not find any legitimate state interest which is served by this classification. In *Workman* v. *Cardwell* (N.D.Ohio 1972) 338 F.Supp. 893, 901, another Ohio statute that authorized credit of jail time after verdict or plea of guilty and before commitment only upon certification and recommendation of the sentencing judge was held to be "unconstitutional on its face [because] it compels an indigent prisoner to be confined for a period longer than one who is released on bail between verdict or plea and commitment." Mandate was issued to compel the credit of all precommitment jail time.[3] Other federal cases in which like results were reached upon like reasoning are *Wright* v. *Maryland Penitentiary, State of Maryland* (4th Cir. 1970) 429 F.2d 1101; *Wilson* v. *State of North Carolina* (4th Cir. 1971) 438 F.2d 284; *Stapf* v. *United States* (1966) 367 F.2d 326 [125 App. D.C. 100]; and *Hart* v. *Henderson* (5th Cir. 1971) 449 F.2d 183.[4]

Unless the authority of these cases is weakened by the recent United States Supreme Court's decision in *McGinnis* v. *Royster* (1973) 410 U.S. 263 [35 L.Ed.2d 282, 93 S.Ct. 1055], petitioner is entitled to the relief

---

[3]In connection with respondent's contention that granting petitioner the relief he seeks will necessarily strike down the bail system, both *White* and *Workman, supra,* make it clear that this is not true.

[4]We note that in *Mott* v. *Dail* (E.D.N.C. 1972) 337 F.Supp. 731, a North Carolina statute allowing credit for jail time prior to conviction only to prisoners convicted after its effective date (the effect of which would be precisely similar to Pen. Code, § 2900.5) was declared invalid as to the portion giving it only prospective application because it subjected prisoners convicted before its effective date to an "invidious discrimination." Mandamus was issued requiring such credit to the term of a sentence imposed prior to effective date. Similar "prospective only" statutes in Pennsylvania and Illinois were dealt like results in *Commonwealth* v. *Snyder* (1967) 427 Pa. 83 [233 A.2d 530], and *People* ex rel. *Carroll* v. *Frye* (1966) 35 Ill.2d 604 [221 N.E.2d 262], but contrary results were reached as to similar Michigan and New Mexico statutes in *Bowen* v. *Recorder's Court Judge* (1970) 384 Mich. 55 [179 N.W.2d 377], and *State* v. *Luna* (1968) 79 N.M. 307 [442 P.2d 797]. (Cf. Schorn-horst, *Presentence Confinement and the Constitution: The Burial of Dead Time,* 23 Hastings L.J. 1041, 1074.) Although *Mott* is cited by petitioner, he does not attack the constitutionality of the solely prospective application of Penal Code section 2900.5. We are not required to determine which of these lines of cases is supported by the better reasoning.

he seeks. That decision was handed down but a few days after argument and submission of the case at hand and reversed the United States District Court's decision in *Royster* v. *McGinnis* (S.D.N.Y. 1971) 332 F.Supp. 973, relied upon by petitioner and cited for its dissenting opinion by respondent. The case involved the matter of good time credit under a rather complicated New York statute in computing a prisoner's minimum parole date and his statutory release date. A credit of 10 days per month for good conduct and efficient performance of duty could be earned. Presentence jail time was included in the computation in determining the statutory release date but excluded in the determination of the minimum parole date. The federal district court, with the dissent noted above, held that the exclusion was in violation of the Fourteenth Amendment. The Supreme Court noted (410 U.S. at p. 269 [35 L.Ed.2d at p. 288]), as meriting attention, the point that in computing the statutory release date a prisoner's presentence confinement is included in the computation of his good time credit. More importantly, it supplies its own emphasis to "the fact that New York did not deprive appellees [unbailed indigents] of credit for the full amount of *actual* time spent in jail prior to trial and sentencing but only of the potential *additional* 10 days per month of good time . . . for good conduct and efficient performance of duty." That emphasis and the remaining content of the decision makes it apparent that the Supreme Court does not weaken the authority of *Gaines, Culp, White, Workman,* and *Mott,* and the other cases cited. ▇ The rule of these cases directs and, by analogy, *Griffin* and *Antazo, supra,* support the conclusion that Penal Code section 2900, as applied to petitioner as an indigent who could not afford bail, operates to create an unconstitutional discrimination and results in an overall confinement of persons who are convicted of the same crime who are able to afford bail and so secure liberty and those who cannot do so and are confined. Although the presentence jail time may not be "punishment" as defined by the Penal Code, it is a deprivation of liberty. The additional deprivation suffered only by the indigent does not meet federal standards of equal protection and does not comply with the mandate of uniform operation of all general laws contained in article I, section 11 of the California Constitution. The enactment of Penal Code section 2900.5 is evidence that the disparate result does not further a compelling governmental interest that is served by classification.

The petition is accordingly granted and the Adult Authority is directed to credit the 62 days of petitioner's presentence confinement to the term

prescribed by the sentence pronounced on June 25, 1971 by the Superior Court of Santa Clara County in petitioner's case.

Devine, P. J., and Bray, J.,* concurred.

A petition for a rehearing was denied May 31, 1973, and respondent's petition for a hearing by the Supreme Court was denied June 28, 1973. Clark, J., was of the opinion that the petition should be granted.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.